[Cite as *State v. Roper*, 2021-Ohio-188.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 29466 |
|---|---|---|
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROBERT ROPER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. CR 12 09 2618 |

DECISION AND JOURNAL ENTRY

Dated: January 27, 2021

---

SCHAFER, Judge.

{¶1}   Appellant, the State of Ohio, appeals the decision of the Summit County Court of Common Pleas granting Defendant-Appellee, Robert D. Roper's, motion for a new trial.  For the reasons that follow, this Court reverses.

I.

{¶2}   Mr. Roper had been living with his girlfriend and her three children.  In September 2011, the girlfriend's six-year-old daughter disclosed to her mother that Mr. Roper had sexually abused her over the course of four days when the daughter was five years old.  On September 12, 2012, the Summit County Grand Jury indicted Mr. Roper on one count of rape in violation of R.C. 2907.02(A)(1)(b).  A jury trial commenced in June 2013.  Following deliberations, the jury found Mr. Roper guilty.  On July 11, 2013, the trial court sentenced him to life in prison without the possibility of parole.

{¶3}   Mr. Roper appealed, and this Court affirmed his conviction. *State v. Roper,* 9th Dist. Summit No. 27025, 2014-Ohio-4786, ¶ 37. *But see State v. Roper*, 143 Ohio St.3d 419, 2015-Ohio-3379, ¶ 1 (reversing judgment of the court of appeals and vacating the no-contact order).

{¶4}   On January 4, 2017, with leave of court, Mr. Roper filed a motion for a new trial pursuant to Crim.R. 33. Mr. Roper based his motion on certain information prosecutors learned about Juror No. 4 subsequent to his trial, regarding her role in a 2015 trial in an unrelated criminal case. Mr. Roper alleged that, during voir dire in his trial, Juror No. 4 had deliberately concealed her daughter's report of sexual abuse against Juror No. 4's husband, and argued that his right to a fair trial had been violated by juror misconduct. Mr. Roper argued that, had Juror No. 4 truthfully disclosed information in response to certain questions during voir dire, his trial counsel would have had the opportunity to pose further questions and to seek her removal from the jury panel for cause.

{¶5}   The issues were fully briefed, and the trial court held an evidentiary hearing. The trial court then issued its ruling, finding that Juror No. 4 may well have been "a fair and impartial juror, as she testified she believed she was[,]" but concluding that the circumstances created a "cloud of doubt hanging over the fairness of Mr. Roper's trial." The trial court granted Mr. Roper's motion and ordered a new trial.

{¶6}   The State timely appealed the trial court's order granting a new trial and raised one assignment of error for our review.

II.

**Assignment of Error**

**The trial court abused its discretion when it granted [Mr.] Roper's motion for a new trial, meriting reversal and vacation of the trial court's order.**

{¶7}   In its sole assignment of error, the State argues that the trial court abused its discretion by granting Mr. Roper's motion for a new trial. The State contends that (1) the trial

court did not make a finding that the juror was dishonest when she failed to raise her hand during voir dire; (2) the trial court failed to apply Crim.R. 24 to find that Mr. Roper would have successfully challenged the juror for cause; and (3) the trial court erred when it failed to consider the juror's testimony that, despite the circumstances, she remained fair and impartial.

{¶8}  In Mr. Roper's motion for leave to file a delayed motion for a new trial and accompanying motion for a new trial, he argued that he was entitled to a new trial pursuant to Crim.R. 33(A)(2)/(A)(6)/(B), based on the discovery of new evidence of juror misconduct.  This Court reviews a trial court's decision to grant or deny a motion for new trial for an abuse of discretion.  *State v. Pyle*, 9th Dist. Summit No. 28802, 2018-Ohio-3160, ¶ 47.  "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court.  *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶9}  Crim.R. 33(A)(2) provides that "[a] new trial may be granted on motion of the defendant for * * * [m]isconduct of the jury * * *."  "[U]nder Crim.R. 33(A)[ and also R.C. 2945.79(B)], juror misconduct justifies a new trial only if it materially affected an accused's substantial rights."  *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 45.  The trial court's consideration of a motion for a new trial based on juror misconduct involves two steps: (1) a "determination [of] whether misconduct actually occurred," and (2) "whether that misconduct materially prejudiced the defendant's substantial rights."  *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 48.

{¶10} Defendants in criminal prosecutions are guaranteed the right to a trial by an impartial jury through the Due Process Clause of the Fourteenth Amendment and Sixth Amendment to the United States Constitution, as well as the Ohio Constitution, Article I, Section 10. *See State v. Roberts*, 9th Dist. Wayne No. 14AP0035, 2015-Ohio-5044, ¶ 17; *Duncan v. Louisiana,* 391 U.S. 145 (1968). Due process requires "an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, (1984) quoting *Smith v. Phillips*, 455 U.S. 209, 217, (1982). "*Voir dire* examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors." *Id.* To establish a constitutional violation where a claim of jury misconduct is based on a juror's concealment of information or failure to disclose potential bias, the defendant has the burden to establish that a seated juror was not impartial. *State v. Williams*, 79 Ohio St.3d 1, 4 (1997).

{¶11} The parties agree that the Supreme Court of Ohio's decision in *Grundy v. Dhillon*, 120 Ohio St.3d 415, 2008-Ohio-6324, provides the relevant analytical structure for examining a juror's alleged misrepresentations during voir dire.[1] In *Grundy*, the Court held

> [t]o obtain a new trial in a case in which a juror has not disclosed information during voir dire, the moving party must first demonstrate that a juror failed to answer honestly a material question on voir dire and that the moving party was prejudiced by the presence on the trial jury of a juror who failed to disclose material information.

*Grundy* at paragraph one of the syllabus (following the approach of the United States Supreme Court in *McDonough Power Equip. Inc.*, 464 U.S. 548). Further, "[t]o demonstrate prejudice,

---

[1] Although *Grundy* was decided based on a motion for a new trial in a civil case, some of our sister districts have recognized its applicability in the criminal context. *See State v. Balka*, 5th Dist. Licking No. 2008 CA 00119, 2009-Ohio-4857, ¶ 29; *State v. Necessary*, 11th Dist. Ashtabula No. 2013-A-0001, 2013-Ohio-4962, ¶ 17.

the moving party must show that an accurate response from the juror would have provided a valid basis for a for-cause challenge." *Id.* citing *Pearson v. Gardner Cartage Co.*, 148 Ohio St. 425 (1947), paragraph two of the syllabus. A court may infer bias only if it finds that the juror deliberately concealed or failed to disclose information but, "if the concealment was unintentional, the appellant must show that the juror was actually biased." *Williams* at 4.

*Mr. Roper's Motion for a New Trial*

{¶12} Mr. Roper based his Crim.R. 33 motion for a new trial on the information prosecutors learned about Juror No. 4 (hereinafter "S.P.") nearly two years after Mr. Roper's trial, during a 2015 trial in an unrelated criminal case. In his motion, Mr. Roper argued that his "right to a fair trial was violated by a juror's deliberate concealment of her daughter's sexual-abuse reports against the juror's husband." This 2015 trial involved the State's case against James Pistawka. Mr. Pistawka faced charges "on five counts of rape, nine counts of gross sexual imposition, and one count of sexual battery. The charges arose out of incidents reported by Mr. Pistawka's two daughters and his stepdaughter, [C.G.] *State v. Pistawka*, 9th Dist. Summit No. 27828, 2016-Ohio-1523, ¶ 2.

{¶13} S.P. is the mother of C.G. Mr. Pistawka married S.P. in 2001 when C.G. was nine years old. *Id.* ¶ 3. In August 2007, when she was fifteen years old, C.G. ran away from home. *Id.* At that point, C.G. reported to police that Mr. Pistawka sexually abused her when she was ten years old. *Id.* C.G.'s mother did not believe C.G.'s allegations against Mr. Pistawka.

{¶14} C.G. was removed from her home and temporarily placed in foster care before going to live with her biological father. C.G. desired to return home to live with her mother and, after she recanted her accusations against Mr. Pistawka, "the investigation into them was dropped * * *." *Id.* C.G. returned to her mother's home where she continued to live with her mother and

Mr. Pistawka. However, in late 2013, C.G.'s two stepsisters—Mr. Pistawka's biological daughters—made their own allegations of sexual abuse against Mr. Pistawka. C.G. then reaffirmed her prior accusations against Mr. Pistawka.

{¶15} During Mr. Pistawka's trial, certain information came to light when S.P.—Mr. Pistawka's estranged wife and mother of C.G.—was set to testify on Mr. Pistawka's behalf. Based on S.P.'s responses to a defense investigator's questions, prosecutors in the case learned that she previously served on a jury in a Summit County criminal case involving a child rape. Upon further inquiry, the prosecutors learned that she had served as Juror No. 4 in Mr. Roper's 2013 trial. The prosecutors then obtained a transcript of the voir dire portion of Mr. Roper's trial to learn how S.P. had responded to questions posed during the jury selection process.

{¶16} Prior to allowing her to take the stand as a witness in Mr. Pistawka's trial, the court conducted an examination of S.P. on the record. The trial court explained that, during their review of the transcript from Mr. Roper's trial, prosecutors became concerned that S.P. had not raised her hand in response to questions posed to members of the jury panel regarding their prior dealings with children services and familial incidents of sexual conduct. The trial court stated to S.P., "You never brought to light in the trial of that case that you personally had a child removed from your home at a time when there were at least allegations of sexual misconduct by somebody in the home." The trial court advised S.P. that "an argument could be made that by not providing relevant factual information in response to the questions," she may have committed perjury. The trial court advised S.P. that, if she were to take the stand and testify in Mr. Pistawka's case, she might be subjected to cross-examination on that topic and might potentially be exposed to charges of perjury. After consulting with legal counsel, S.P. ultimately testified in Mr. Pistawka's case.

{¶17} "A jury found Mr. Pistawka guilty of two counts of rape and four counts of gross sexual imposition as to C.G., one count of rape, four counts of gross sexual imposition," and one count of sexual battery as to each of his biological daughters. *Pistawka*, 2016-Ohio-1523, at ¶ 6. In May 2015, the trial court entered its judgment of conviction against Mr. Pistawka. This Court affirmed his conviction on appeal. *Id*. at ¶ 22.

{¶18} Mr. Roper asserted in his motion for a new trial that, as a potential juror during voir dire, S.P. "concealed information about her marriage to [Mr.] Pistawka" and concealed information about Mr. Pistawka and about her "son's criminal history." Further, Mr. Roper argued that S.P. "concealed the fact that her husband[, Mr. Pistawka,] had been accused of the very same kind of conduct that Mr. Roper was being accused of" when she failed to "reveal the fact that her daughter had been removed by [Summit County Children Services "CSB"] in 2007 because of reports that Mr. Pistawka sexually abused her when she was a child." Specifically, Mr. Roper asserted that S.P. offered no response to the questions posed by his trial counsel as to whether any members of the jury panel had dealings with children services and whether any potential jurors "or their immediate family had 'been the victim of any type of child abuse, sexual or otherwise[.]'"

{¶19} Mr. Roper asserted that, as a consequence of her failure to disclose this information, his trial counsel could not ask S.P. about the accusations her daughter made, claiming that she had been sexually abused by her stepfather, S.P.'s husband. Mr. Roper alleged that S.P.'s explanation for her failure to disclose that information was "simply not credible" and, therefore, presumed the "only credible explanation [was] that she actively concealed honest answers to material questions during Mr. Roper's voir dire." Mr. Roper contends he was prejudiced by this non-disclosure because, had S.P. truthfully divulged such information, his trial counsel would have sought to remove her as a juror for cause. Mr. Roper argued that S.P.'s allegedly "deliberate concealment"

of material information should be viewed as "presumptive evidence that she was a biased juror who could have been excused for cause."

{¶20} The State opposed Mr. Roper's motion and, after the parties briefed the issues, the trial court held a hearing. During the hearing, the trial court heard testimony from S.P. as well as Mr. Roper's trial counsel. At the outset of the hearing, the parties stipulated that S.P. had not raised her hand in response to any questions that were posed during voir dire regarding involvement with children services, nor to the "question regarding whether anyone in the family had been the victim of child abuse * * *." At the conclusion of the hearing, the trial court instructed the parties to file post-hearing briefs. Mr. Roper filed a post-hearing brief and the trial court granted the State leave to file its post-hearing brief under seal. Although the trial court references the State's brief in its order, it is not part of the record before this Court.

{¶21} The trial court subsequently issued a journal entry granting Mr. Roper's motion for a new trial. In its decision, the trial court rejected two of Mr. Roper's arguments: that S.P. did not truthfully answer questions regarding her marital status, and that she was untruthful regarding "her awareness of the criminal record of her son and her then-husband * * *." The trial court found that, while those issues "tangentially involve alleged untruthfulness," S.P. "adequately explained her reasoning for the answers she gave" to those questions. Therefore, the trial court declined to consider those issues and turned its focus to Mr. Roper's remaining arguments "of the core issue of prejudice to [his] substantial right to a fair trial."

{¶22} The trial court, after a review of the briefs, the testimony at the hearing, and "a complete review of the CSB records on file under seal," and upon consideration of "the applicable law," concluded that it had "no alternative but to order a new trial." The trial court noted that S.P. "indicated that she had no bias either way[,]" but found that "there exist too many discrepancies

in the testimony she provided during the trial of her then-husband concerning his alleged sexual abuse of her daughter, and in the evidence and testimony presently before the court." The trial court impliedly rejected S.P.'s explanation for these unspecified "discrepancies" and concluded that, "regardless of her reasoning and her explanation for non[]disclosure, [S.P.] did not fully participate in the voir dire process * * *." The trial court reasoned that, had S.P. "disclosed her family situation, it would have, at a minimum, provided a logical basis for a 'for cause' challenge."

{¶23} The trial court also considered the testimony of Mr. Roper's trial counsel and concluded that S.P.'s failure to "fully participate in the process of jury selection" deprived trial counsel of the opportunity to seek to remove her from the panel for cause, to ask her specific questions about abuse allegations in the family and the family's involvement with children services, and to exercise one of his peremptory challenges if his challenge for cause had been denied. The trial court concluded that S.P.'s "lack of complete disclosure resulted in unfair prejudice to Mr. Roper's right to a fair trial."

{¶24} In reaching its decision, the trial court noted that S.P. may well have been "a fair and impartial juror, as she testified she believed she was." Still, the trial court concluded that a new trial must be granted because the issues created a "cloud of doubt hanging over the fairness of Mr. Roper's trial."

*Juror's failure to answer honestly a material question on voir dire*

{¶25} The State first argues that the trial court did not find that S.P. was "dishonest" when she failed to raise her hand during voir dire. The State asserts that, rather than finding that S.P. was dishonest, the trial court found that she failed to fully participate in the jury selection process when she failed to raise her hand. It is the State's contention that a trial court must make a finding of dishonesty before it can grant a new trial, because the first prong of the rule in *Grundy* requires

that a defendant "must first demonstrate that a juror failed to answer *honestly* a material question on voir dire * * *."  (Emphasis added.)  *Grundy*, 120 Ohio St.3d 415, 2008-Ohio-6324, at paragraph one of the syllabus.

{¶26}  The trial court's decision does not reflect an explicit finding of dishonesty.  In its decision, the trial court, without further elaboration, found S.P.'s recollection of her involvement with CSB "arguably absurd" and found "discrepancies" in S.P.'s testimony on the matter.  On this basis the trial court concluded that, "regardless of her reasoning and her explanation for non-disclosure," S.P. "did not fully participate in the voir dire process," but made no determination of dishonesty.

{¶27}  However, a finding of juror misconduct does not necessarily require an explicit finding of dishonesty when a juror fails to answer a material question.  This Court has previously stated, "[i]f a juror remains mute when [s]he should answer, the effect of h[er] silence is the same as a false answer."  *Guhl v. G. W. Murphy Industries, Inc.*, 9th Dist. Wayne No. 1365, 1974 WL 183998, *3 (Nov. 6, 1974).  Thus, a finding that a juror failed to respond to a material question, whether deliberately or through inadvertence, may have the same effect as a finding that a juror failed to answer honestly.

{¶28}  The relevant questions raised during voir dire in Mr. Roper's trial inquired as to juror interactions with children services and experience with instances of sexual abuse.  Although the parties stipulated that S.P. did not raise her hand in response to such a question, it is not clear to this Court in what way the trial court viewed S.P.'s non-disclosure of sexual abuse *allegations* in response to the voir dire inquiry as to whether any of the jurors' family *had been* a victim of abuse.  The record reflects that, when that question was posed during voir dire, S.P. did not believe a member of her family had been abused.  Consequently, we find her obligation to affirmatively

respond to that question uncertain and the effect of her silence on that issue arguably harmless in light of the sequence of events. At the time of Mr. Roper's trial, S.P. was aware that her daughter had accused and then recanted her claim that Mr. Pistawka sexually abused her—a claim that S.P. has never believed. It was not until after voir dire and after the conclusion of Mr. Roper's trial that Mr. Pistawka's two daughters came forward with their own accusations against him and that C.G. reaffirmed the claims of sexual abuse she made as a child. Even at that point, S.P. maintained she did not believe Mr. Pistawka had sexually abused C.G.

**{¶29}** Nonetheless, we need not resolve this issue because the trial court correctly observed that S.P. failed to respond to the question about involvement with CSB. S.P. remained silent during voir dire where she should have raised her hand to the question regarding CSB involvement. Although the trial court did not find that S.P. willfully or deliberately failed to give an honest answer during voir dire, the effect of her failure to raise her hand is sufficient to show juror misconduct. Whether such juror misconduct was prejudicial is a separate question. However, we conclude that the State's argument that the trial court was required to make a specific finding of dishonesty lacks merit.

*Prejudice by juror who failed to disclose material information.*

**{¶30}** The State next argues that the trial court abused its discretion when it granted a new trial without finding a valid basis for a challenge for cause. The State contends that the trial court made no finding that Mr. Roper was prejudiced and failed to engage in the analysis to determine whether there existed grounds for a successful challenge for cause. The State further argues that the trial court failed to consider whether S.P. maintained an ability to be fair and impartial.

**{¶31}** Mr. Roper first had the burden to prove juror misconduct by showing that S.P. failed to answer honestly a material question on voir dire. *Jalowiec*, 2015-Ohio-5042, at ¶ 48; *Grundy*,

120 Ohio St.3d 415, 2008-Ohio-6324, at paragraph one of the syllabus. As we stated above, Mr. Roper met this initial burden because S.P.'s failure to raise her hand in response to a material question during voir dire had the same effect as a false answer. However, to establish that he is entitled to a new trial, Mr. Roper then had the burden show this misconduct materially prejudiced his substantial rights. *Jalowiec* at ¶ 48; *Grundy* at paragraph one of the syllabus. In this instance, Mr. Roper could demonstrate prejudice by showing that "an accurate response from [S.P.] would have provided a valid basis for a for-cause challenge." *Grundy* at paragraph one of the syllabus.

{¶32} In his motion for a new trial, Mr. Roper asserted that S.P.'s explanation for failing to respond to questions during voir dire were "simply not credible" and that the "only credible explanation [was] that she actively concealed honest answers to material questions during Mr. Roper's voir dire." Based on his allegation that S.P. deliberately concealed her family's experience with CSB and child sexual abuse, Mr. Roper argued that her failure to disclose should be viewed as presumptive evidence that she was a biased juror who could have been excused for cause. In his merit brief, Mr. Roper claims that the trial "court implicitly determined and held that bias by [S.P.] could be inferred both from the deliberate concealment of material information about her daughter's accusations of sexual abuse against her then-husband, and from the extent of her own involvement with children's services." Thus, to support his claim that he was prejudiced by juror misconduct, Mr. Roper relied on his unsubstantiated presumption that S.P. deliberately concealed information during voir dire.

{¶33} "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough Power Equip. Inc.*, 464 U.S. at 556. Here, however, Mr. Roper has not provided support for his bald assertion that S.P. actively concealed information or deliberately failed to respond to any question.

Moreover, despite his claim to the contrary, there is no indication, explicit or implicit, in the trial court's decision that the court found S.P. had deliberately concealed information or that actual bias could be inferred from her failure to respond. Although a court certainly may infer bias if it finds that a juror deliberately concealed information, the trial court here made no finding that S.P. intentionally failed to raise her hand or deliberately concealed information during voir dire. *See Williams*, 79 Ohio St.3d at 4. In the absence of a finding of intentional or deliberate concealment, the trial court had to determine whether Mr. Roper was prejudiced by juror misconduct: whether an accurate response to the questions would have revealed juror bias sufficient to establish a valid basis to challenge the juror for cause. *Grundy* at paragraph one of the syllabus.

{¶34} The trial court did not determine whether S.P.'s disclosure of her involvement with CSB would have provided a valid basis for a challenge for cause. Instead, the trial court found that "it is only logical to conclude that had she disclosed her family situation, it would have, at a minimum, provided a logical basis for a 'for cause' challenge." However, finding a *logical basis* for a challenge for cause is not the equivalent of finding a *valid basis* for a challenge for cause.

{¶35} Crim.R. 24(C)(9) provides that a person called as a juror may be challenged for cause if

> the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

R.C. 2945.25(B) states nearly identically grounds to remove a juror for cause. Thus, a valid basis for a challenge for cause pursuant to Crim.R. 24(C)(9) requires a showing that a juror was unable to act impartially or was actually biased against the accused. *See Necessary*, 2013-Ohio-4962, at

¶ 36. Otherwise stated, a valid basis involves more than a theoretical, plausible, or logical basis to assert a challenge for cause.

{¶36} Here, the trial court did not make a finding that S.P. was biased toward Mr. Roper and expressly recognized that S.P. indicated "she had no bias either way." Instead, the trial court based its decision on what it described as the "many discrepancies" in S.P.'s testimony at Mr. Pistawka's trial and at the hearing on Mr. Roper's motion for a new trial. Yet, the trial court did not identify the nature of the discrepancies nor discuss their implied significance. The trial court concluded that S.P.'s failure to "fully participate in the process of jury selection" deprived Mr. Roper's trial counsel of the chance to ask her specific questions about her daughter's abuse allegations and her own involvement with CSB, and deprived him of "the opportunity to seek to remove her from the panel for cause," or to remove her with a peremptory challenge "were his challenge for cause to have been denied." The trial court then summarily concluded that this "lack of complete disclosure resulted in unfair prejudice" to Mr. Roper and, though S.P. may have been a fair and impartial juror, her presence as a juror created "a cloud of doubt hanging over the fairness of Mr. Roper's trial."

{¶37} The conclusion that Mr. Roper was prejudiced—because the lack of disclosure prevented further inquiry on voir dire and the opportunity to challenge the juror for cause—is based on a presupposition that the absence of such information was, in fact, prejudicial. A finding of prejudice on this basis circumvents the required analysis entirely. The fact of nondisclosure does not, in and of itself, establish prejudice. Such an inference is not permitted unless the juror deliberately or intentionally concealed information. *Williams*, 79 Ohio St.3d at 4. Rather than assuming prejudice, it was incumbent upon the trial court to consider the substance and materiality of an accurate response from S.P., to probe for bias, and to determine whether, despite any

rehabilitation, a valid basis existed to challenge S.P. for cause. *See id.*; *Grundy*, 120 Ohio St.3d 415, 2008-Ohio-6324, at paragraph one of the syllabus.

**{¶38}** Had S.P. disclosed her experience with CSB during voir dire, subsequent questioning may well have led S.P. to disclose that her daughter accused S.P.'s husband of sexual abuse. Still, this information on its own does not establish bias sufficient to warrant a valid basis for a challenge for cause. "Notably, '[a] prospective juror is not automatically disqualified by the fact that a close relative has been the victim of a crime similar to the crime on trial.'" *State v. Stevens*, 5th Dist. Morgan No. 14 AP 0005, 2015-Ohio-307, ¶ 36, quoting *State v. Murphy,* 91 Ohio St.3d 516, 525 (2001). At the time of Mr. Roper's trial, S.P.'s daughter had recanted her allegations of sexual abuse and S.P.'s testimony on the topic would have likely reflected her belief that her daughter had lied, falsely accusing the stepfather of sexual abuse. Although S.P.'s personal experience may be germane in light of the charges against Mr. Roper, there is nothing inherent in her experience to suggest bias toward Mr. Roper. Moreover, S.P.'s personal experience could have been viewed as indicative of her capacity to believe that a person may be falsely accused of committing sexual abuse.

**{¶39}** Furthermore, as the trial court observed regarding the testimony at the hearing, Mr. Roper's trial counsel indicated that he "would have wanted to inquire further" of S.P. Trial counsel testified that, due to the nature of the allegations against Mr. Roper, if a juror had a child that had been abused, he would have "almost certainly" made a challenge for cause and that he "would have great concern of their ability to separate those experiences from what was going in Mr. Roper's trial." However, trial counsel qualified that statement by stating he would make such a challenge "absent that juror being able to rehabilitate themselves * * *." Additionally, in discussing whether he would have sought to remove S.P. for cause, trial counsel emphasized his

concern regarding a juror who had lied to the court under oath. However, any subsequent issues as to whether S.P. lied under oath or, regarding any motive or inadvertence behind S.P.'s failure to disclosure information, are not relevant to the present analysis. The focus here is not on the fact that S.P. failed to disclose information, but whether the information she failed to disclose would have revealed bias sufficient to establish a valid basis to challenge her for cause if she had responded accurately.

{¶40} Although it is generally well within the trial court's discretion to determine the existence of juror bias sufficient to create the need to declare a mistrial, "[m]ere supposition, surmise, and possibility of prejudice are not sufficient" and the record here reveals no substantive basis for the trial court to have determined bias. *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, ¶ 31. Without thoroughly discussing her credibility or examining grounds for actual bias, and notwithstanding S.P.'s claim of impartiality, the trial court decided that the "cloud of doubt" must be cleared away and granted Mr. Roper a new trial. Regardless of any theoretical or hypothetical basis for a challenge for cause, *Grundy* requires a *valid* basis and Crim.R. 33 requires a prejudicial effect resulting from juror misconduct to warrant a new trial; the finding of a valid basis is absent from the trial court's analysis.

{¶41} This Court concludes that the trial court did not properly apply the law to analyze whether information that S.P. failed to disclose during voir dire would have revealed a potential bias or prejudice to provide a valid basis for a challenge for cause pursuant to Crim.R. 24(C)(9). *See Grundy*, 120 Ohio St.3d 415, 2008-Ohio-6324, at paragraph one of the syllabus; *Williams*, 79 Ohio St.3d at 4. Without first finding a valid basis to challenge S.P. for cause, the trial court erred by finding that Mr. Roper's substantial rights were prejudiced and a new trial required. Crim.R. 33(A); R.C. 2945.79(B); *Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, at ¶ 45; *Jalowiec*, 2015-

Ohio-5042, at ¶ 48. Further, the trial court's analysis did not adequately take into account S.P.'s testimony to determine whether or not the court was satisfied she could "render an impartial verdict according to the law and the evidence submitted to the jury at the trial." Crim.R. 24(C)(9). Consequently, we conclude the trial court abused its discretion by granting the motion for a new trial.

{¶42} The State's assignment of error is sustained.

III.

{¶43} The State's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas granting Mr. Roper a new trial is reversed, and this matter is remanded for further proceedings.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellant.

PETER GALYARDT, Assistant Ohio Public Defender, for Appellee.